UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:24 CR 00083 JAR |
| | ) | |
| WILLIAM BURNS, | ) | |
| | ) | |
| Defendant. | ) | |

### GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

1. **PARTIES:**

The parties are Defendant William Burns, represented by defense counsel Jason Korner, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

2. **GUILTY PLEA:**

   A. **The Plea:**

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for Defendant's voluntary pleas of guilty to Counts I - V of the Indictment, the Government agrees that no further federal prosecution will be brought in this District relative to Defendant's production or possession or receipt or distribution of child pornography between July 1, 2022, and July 30, 2023, of which the Government is aware at this time.

1

**B.**    **The Sentence:**

The parties agree that the recommendations contained herein fairly and accurately set forth some U.S. Sentencing Guidelines that are applicable to this case. The Government agrees to recommend a sentence of imprisonment between 420 and 480 months, to be followed by lifetime supervised release and all applicable restitution and assessments. The parties further agree that Defendant may recommend a sentence as low as 240 months imprisonment. The parties understand that the Court is neither a party to nor bound by the Guidelines recommendations or sentencing recommendations agreed to in this document.

**3.**    **ELEMENTS:**

As to Count I, Defendant admits to knowingly violating Title 18, United States Code, Sections 2251(a) and 2251(e), and admits there is a factual basis for the plea and further fully understands that the elements of the crime of Conspiracy to Commit Sexual Exploitation of a Child which he admits to knowingly committing and for which he admits there is a factual basis are: (1) Victim 1 was under the age of eighteen years at the times alleged in the Indictment; (2) Defendant knowingly conspired with Rachel Burns to use Victim 1 to engage in sexually explicit conduct; (3) Defendant conspired with Rachel Burns with the purpose of producing visual depictions of Victim 1 engaging in sexually explicit conduct; and (4) the visual depictions were produced using cell phones that had been mailed, shipped, or transported across state lines or in foreign commerce.

As to Counts II, III, and V, Defendant admits to knowingly violating Title 18, United States Code, Section 2251(a), and admits there is a factual basis for the pleas and further fully understands that the elements of the crime of Sexual Exploitation of a Child which he admits to knowingly committing and for which he admits there is a factual basis are: (1) Victim 1 was under the age of eighteen years at the times alleged in the Indictment; (2) Defendant knowingly used Victim 1 to

2

engage in sexually explicit conduct; (3) Defendant acted with the purpose of producing visual depictions of Victim 1 engaging in sexually explicit conduct; and (4) the visual depictions were produced using cell phones that had been mailed, shipped, or transported across state lines or in foreign commerce.

As to Count IV, Defendant admits to knowingly violating Title 18, United States Code, Section 2252A(5), and admits there is a factual basis for the plea and further fully understands that the elements of the crime of Possession of Child Pornography which he admits to knowingly committing and for which he admits there is a factual basis are: (1) at the times alleged in the Indictment, Defendant knowingly possessed digital files that were visual depictions of child pornography involving prepubescent minors less than twelve years old; (2) Defendant knew that the visual depictions were of minors engaging in sexually explicit conduct; (3) the visual depictions had been transported by computer in interstate or foreign commerce.

## 4.   FACTS:

The parties agree that the facts in this case are as follows and that the Government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

On July 30, 2023, Rachel Burns traveled to University City, Missouri, from her home in Franklin County, Missouri, for the purpose of picking up an eleven-year-old girl. Rachel and her husband, William Burns, had been communicating with a person on Facebook whom they believed to be an eleven-year-old girl, but who was in fact an adult member of a citizen vigilante group called "Predator Poachers." Rachel and William Burns had each separately communicated with the purported eleven-year-old by text message, and each had discussed with the purported eleven-year-old their plans to bring her into their home and have a sexual relationship with her.

3

When Rachel Burns arrived at the agreed-upon location to pick up the purported eleven-year-old, her two small children were in the car with her. But, instead of the eleven-year-old, she was met by a member of the "Predator Poachers," who interviewed her, and audio/video recorded their conversation. Rachel first called William Burns, and William spoke on speaker phone before driving himself to the scene. Both Rachel and William admitted their intent to pick up the eleven-year-old, as well as their respective parts in the Facebook communications with the purported eleven-year-old. University City Police arrived on scene and arrested Rachel and William. They were charged in St. Louis County Circuit Court with Attempted Enticement of a Child. Lawful search warrants were obtained to search the contents of their phones. Their two children were taken into protective custody.

While in the custody of the University City Police Department (UCPD), Rachel volunteered information relative to William's possession of child pornography in Franklin County, within the Eastern District of Missouri. She told them that she previously had found child pornography on William's computer and that she suspected the presence of child pornography on a hard drive that William had instructed her to stow away in a vehicle. She also indicated that investigators would find child pornography on devices within their home, specifically on a red and black thumb drive. Rachel further described a time when William was watching child pornography while the two of them were having sex. When asked how many times she had seen child pornography in William's possession since she had been with him, she responded, "honestly, the whole time."

UCPD relayed their information to investigators with the Franklin County Sheriff's Office (FCSO), who previously had received a tip regarding child pornography at Rachel and William Burns' residence. FCSO investigators obtained lawful warrants to search the Burns residence and

the vehicle described by Rachel, and to seize and examine all computer and digital storage devices for evidence of child pornography. Investigators seized two hard drives from the vehicle. They seized a phone, two laptops, and a USB drive from the home. While searching the home, investigators observed whips, numerous sex devices, a "mechanical sex machine," and a silicone sex doll made to resemble a prepubescent female. They obtained a second search warrant to seize those items. They noted that the silicone doll was oily to the touch and had tearing in the anal and vaginal areas, and around the underarms and wrists, suggestive of bondage. The silicone doll measured 3 feet, seven inches in height.

FCSO investigators examined the computer and digital storage devices and counted 13,954 image and video files depicting Child Sexual Abuse Material (CSAM). Each of the six devices contained varying amounts of CSAM. Many of the CSAM files depicted sadistic and penetrative acts against prepubescent children, sometimes as young as toddler-age. There were an additional 8,424 files containing Child Exploitative Material and/or sexually explicit conduct involving individuals whose ages are difficult to determine, but who could be minors. The examiner further determined that William had used a WhatsApp social media account to exchange CSAM with other WhatsApp users over the Internet.

Concurrent with the Franklin County investigation, UCPD delivered Rachel and William's phones to the St. Louis County Police Department. The contents of both phones were extracted for examination. A subsequent forensic examination of William's phone revealed the following:

- 442 image files and 5 video files depicting CSAM.

- 220 image files and 4 video files depicting Child Exploitative or Age-Difficult Material;

- A WhatsApp social media account that William utilized to store and trade CSAM with fifty-eight other WhatsApp users;

5

- An encrypted "Gallery Vault" used to "hide photos and videos from spying eyes and download all images and videos on a web page."

- Internet bookmarks for a "sex machine" and a website with the words "illegal pussy" in its title;

- The following web searches:

  o "how to sponsor unaccompanied minor";

  o "man arrested for meeting young girl";

  o "ChildRapevideo";

  o "university city".

The examiner used additional forensic tools to decrypt the "Gallery Vault" on William's phone. Within the gallery vault the examiner found the following:

- A video dated July 1, 2022, depicting William and Rachel Burns sexually abusing a one-year-old female child (Victim 1) in a hotel room. William and Rachel take turns recording the abuse. Rachel is seen licking the child's vagina while manipulating William's penis. William is then seen licking and rubbing his penis against the child's vagina. William is overheard saying that this was a "good first time." Rachel is visibly pregnant in the video. She gave birth to her second child less than four months later. Additional investigation revealed the location of the hotel to be in Alpharetta, Georgia.

- Four still images dated July 1, 2022, depicting Rachel touching and licking Victim 1's vagina in the same hotel room described above.

- A video dated March 15, 2023, depicting a toddler-age female child (Victim 1) sitting on a bed and touching a dildo to her vagina. Comparison with photos taken during the FCSO

search of the Burns residence revealed that the video was taken in Rachel and William's bedroom. The same dildo was photographed and seized during the search of the residence.

- An image file dated March 15, 2023, depicting Victim 1, in the same room, touching the same dildo to her vagina.

- William distributed the March 15 CSAM video and image files via his WhatsApp account.

The Internet was, and is, a computer communications network using interstate and foreign lines to transmit data streams, including data streams used to store, transfer and receive graphic files. The Internet is a means and facility of interstate and foreign commerce. The defendant's digital devices upon which he received and possessed child pornography were manufactured outside the state of Missouri and had travelled in foreign and/or interstate commerce prior to or during Defendant's possession of them.

5.    **STATUTORY PENALTIES:**

As to Counts I-III and V, Defendant fully understands that the maximum possible penalty provided by law for the crimes of Conspiracy to Commit Sexual Exploitation of a Child and Sexual Exploitation of a Child to which Defendant is pleading guilty is imprisonment of not less than fifteen years and not more than thirty years, and a fine of not more than $250,000. The Court may also impose a period of supervised release of not more than life and not less than five years. **Defendant fully understands that the crime to which a guilty plea is being entered, Sexual Exploitation of a Child, requires a mandatory minimum term of imprisonment of at least fifteen years.**

As to Count IV, Defendant fully understands that the maximum possible penalty provided by law for the crime of Possession of Child Pornography to which Defendant is pleading guilty is imprisonment of not more than twenty years, and a fine of not more than $250,000. The Court

7

may also impose a period of supervised release of not more than life and not less than five years.

6.    **U.S. SENTENCING GUIDELINES: 2024 MANUAL:**

The Defendant understands that these offenses are affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are U.S. Sentencing Guidelines Total Offense Level provisions that apply.

I.    **Counts I-III and V:**

A.    **Chapter 2 Offense Conduct:**

i.    **Base Offense Level:**  The parties agree that the base offense level is thirty-two (32) and is found in Section 2G2.1(a).

ii.    **Specific Offense Characteristics:**  The parties agree that the following Specific Offense Characteristics apply:

(a)    Four (4) levels should be added pursuant to Section 2G2.1(b)(1), because Victim 1 was less than twelve years old.

(b)    Two (2) levels should be added pursuant to Section 2G2.1(b)(2)(A), because the offense involved the commission of a sexual act and sexual contact.

(c)    Two (2) levels should be added pursuant to Section 2G2.1(b)(3), because Defendant knowingly engaged in distribution.

(d)    Four (4) levels should be added pursuant to Section 2G2.1(b)(4), because the offense involved material that portrays sadistic conduct and an infant or toddler.

(e)    Two (2) levels should be added pursuant to Section 2G2.1(b)(5), because Victim 1 was in the care, custody and/or supervisory control of Defendant.

8

**B.**     **Chapter 3 Adjustments:**

**i.**     **Grouping of Counts:** The parties have no agreement as to the effect of Sections 3D1.1 – 3D1.5 on Defendant's Combined Offense Level and will defer to the Court.

**ii.**     **Acceptance of Responsibility:** The parties recommend that two levels should be deducted pursuant to Section 3E1.1(a) because Defendant has clearly demonstrated acceptance of responsibility. If the deduction pursuant to Section 3E1.1(a) is applied, then the United States moves to deduct one additional level pursuant to Section 3E1.1(b), because Defendant timely notified authorities of his intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

The parties agree that if Defendant does not abide by all of the agreements made within this document, Defendant's failure to comply is grounds for the loss of acceptance of responsibility pursuant to Section 3E1.1. The parties further agree that Defendant's eligibility for a reduction pursuant to Section 3E1.1 is based upon the information known at the present time and that any actions of Defendant which occur or which become known to the United States subsequent to this agreement and are inconsistent with Defendant's acceptance of responsibility including, but not limited to criminal conduct, are grounds for the loss of acceptance of responsibility pursuant to Section 3E1.1. In any event, the parties agree that all of the remaining provisions of this agreement remain valid and in full force and effect.

**C.**     **Chapter 4 Adjustments:**

**i.**     **Repeat and Dangerous Sex Offender Against Minors:**     The parties agree that five (5) levels should be added pursuant to Section 4B1.5(b)(1), because Defendant engaged in a pattern of prohibited sexual conduct involving a minor.

9

**C.**    **Estimated Total Offense Level:**  As to Counts I-III and V, the parties estimate that the Total Offense Level is forty-three (43) or greater.

**II.**    **Count IV:**

    **A.**    **Chapter 2 Offense Conduct:**

    **i.**    **Base Offense Level:**  The parties agree that the base offense level is eighteen (18) and is found in Section 2G2.2(a)(1).

    **ii.**    **Specific Offense Characteristics:**  The parties agree that the following Specific Offense Characteristics apply:

    (a)    Two (2) levels should be added pursuant to Section 2G2.2(b)(2), because the material involved a prepubescent minor.

    (b)    Two (2) levels should be added pursuant to Section 2G2.2(b)(3), because Defendant knowingly engaged in distribution.

    (c)    Four (4) levels should be added pursuant to Section 2G2.2(b)(4), because the material involves sadistic conduct and abuse of toddlers.

    (d)    Five (5) levels should be added pursuant to Section 2G2.2(b)(5), because Defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor.

    (e)    Two (2) levels should be added pursuant to Section 2G2.2(6), because the offense involved the use of a computer.

    (f)    Five (5) levels should be added pursuant to Section 2G2.2(b)(7)(D) because Defendant possessed more than 600 images.

    **B.**    **Chapter 3 Adjustments:**

**i.**    **Grouping of Counts:** The parties have no agreement as to the effect of Sections 3D1.1 – 3D1.5 on Defendant's Combined Offense Level and will defer to the Court.

**ii.**    **Acceptance of Responsibility:** The parties recommend that two levels should be deducted pursuant to Section 3E1.1(a) because Defendant has clearly demonstrated acceptance of responsibility. If the deduction pursuant to Section 3E1.1(a) is applied, then the United States moves to deduct one additional level pursuant to Section 3E1.1(b), because Defendant timely notified authorities of his intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

The parties agree that if Defendant does not abide by all of the agreements made within this document, Defendant's failure to comply is grounds for the loss of acceptance of responsibility pursuant to Section 3E1.1. The parties further agree that Defendant's eligibility for a reduction pursuant to Section 3E1.1 is based upon the information known at the present time and that any actions of Defendant which occur or which become known to the United States subsequent to this agreement and are inconsistent with Defendant's acceptance of responsibility including, but not limited to criminal conduct, are grounds for the loss of acceptance of responsibility pursuant to Section 3E1.1. In any event, the parties agree that all of the remaining provisions of this agreement remain valid and in full force and effect.

**C.**    **Estimated Total Offense Level:** As to Count IV, the parties estimate that the Total Offense Level is thirty-five (35).

**III.**    **Criminal History:** The determination of Defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The

11

defendant's criminal history is known to Defendant and is substantially available in the Pretrial Services Report.

**IV.**    **Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines.  The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

**7.**    **WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

**A.**    **Appeal:**   The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**i.**    **Non-Sentencing Issues:**  The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea, the constitutionality of the statute(s) to which Defendant is pleading guilty and whether Defendant's conduct falls within the scope of the statute(s).

**ii.**    **Sentencing Issues:**  In the event the Court accepts the plea and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, where the Criminal History calculation affects the Base Offense Level or Criminal History Category.  Similarly, the Government hereby waives all rights to appeal all sentencing issues provided the Court accepts the plea and sentences Defendant within or above the applicable Guidelines range.

**B.**    **Habeas Corpus:** Defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States

Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

      **C.**    **Right to Records:**  Defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8.**    **OTHER:**

      **A.**    **Disclosures Required by the United States Probation Office:**  Defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the Government.

      **B.**    **Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:**  Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

      **C.**    **Supervised Release:**  Pursuant to any supervised release term, the Court will impose standard conditions upon Defendant and may impose special conditions related to the crime Defendant committed.  Some of these special conditions may include that Defendant not possess a computer or internet access, that Defendant not have contact with minors without the authorization of the Probation Officer, that Defendant participate in sexual offender counseling and that Defendant not maintain a post office box.  In addition, as a condition of supervised release, Defendant shall initially register with the state sex offender registration in Missouri, and shall also register with the state sex offender registration agency in any state where Defendant resides, is

employed, works, or is a student, as directed by the Probation Officer. Defendant shall comply with all requirements of federal and state sex offender registration laws.

These and any other special conditions imposed by the Court will be restrictions with which Defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require Defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. Defendant understands that parole has been abolished.

**D.    Mandatory Special Assessments:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $500, which Defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

Pursuant to Title 18, United States Code, Section 3014, for offenses occurring on or after May 29, 2015, the Court is required to impose an assessment of $5,000 on any non-indigent defendant convicted of an offense under Chapter 110 (relating to sexual exploitation and other abuse of children, including, but not limited to, 18 U.S.C. § 2252A, transportation, distribution, receipt, possession, or access with the intent to view child pornography).

Pursuant to Title 18, United States Code, Section 2259A, Defendant fully understands that for offenses committed on or after December 7, 2018, in addition to any other criminal penalty, restitution or assessment authorized by law, the Court shall assess not more than fifty thousand dollars ($50,000.00) on any person convicted of a child pornography production offense; and not

14

more than seventeen thousand dollars ($17,000.00) on any person convicted of an offense under section 2252A(5).

      **E.**    **Possibility of Detention:**  Defendant shall be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

      **F.**    **Fines, Restitution and Costs of Incarceration and Supervision:**  The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision.  Defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately.  Pursuant to Title 18, United States Code, Sections 3663A and 2259, an order of restitution is mandatory for all crimes listed in Sections 3663A(c) and 2259.  The amount of mandatory restitution imposed shall include all amounts allowed by Sections 3663A(b) and 2259 and the amount of loss agreed to by the parties, including all relevant conduct loss.  Pursuant to Section 2259(b)(2)(B), Defendant shall pay no less than $3,000 to any identifiable victim seeking restitution.

      **G.**    **Forfeiture:** Defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. Said items include three Samsung cell phones, two hard drives, two laptops, and a thumb drive.  Defendant agrees that said items may be disposed of by law enforcement officials in any manner.

**9.**    **ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:**

      In pleading guilty, Defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to

suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the Government to prove the elements of the offenses charged against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. Defendant further understands that by this guilty plea, Defendant expressly waives all the rights set forth in this paragraph.

Defendant fully understands that the Defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. Defendant's counsel has explained these rights and the consequences of the waiver of these rights. Defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

Defendant understands that by pleading guilty, Defendant will be subject to federal and state sex offender registration requirements, and that those requirements may apply for life. Defendant understands that Defendant must keep said registrations current, shall notify the state sex offender registration agency or agencies of any changes to defendant's name, place of residence, employment, or student status, or other relevant information. Defendant shall comply with requirements to periodically verify in person said sex offender registration information. Defendant understands that defendant will be subject to possible federal and state penalties for failure to comply with any such sex offender registration requirements. If Defendant resides in Missouri following release from prison, defendant will be subject to the registration requirements of Missouri state law. Defendant further understands that, under 18 U.S.C. § 4042(c), notice will be provided to certain law enforcement agencies upon release from confinement following

16

conviction. Defense counsel has advised Defendant of the possible sex offender registration consequences resulting from the plea.

Defendant is fully satisfied with the representation received from defense counsel. Defendant has reviewed the Government's evidence and discussed the Government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which Defendant has requested relative to the Government's case and any defenses.

10.    **VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between Defendant and the Government, and no other promises or inducements have been made, directly or indirectly, by any agent of the Government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, Defendant states that no person has, directly or indirectly, threatened or coerced Defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

Defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of Defendant's own free will and that Defendant is, in fact, guilty.

11.    **CONSEQUENCES OF POST-PLEA MISCONDUCT:**

After pleading guilty and before sentencing, if Defendant commits any crimes, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in

its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

**12.**     **NO RIGHT TO WITHDRAW GUILTY PLEA:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, Defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the Government agrees to dismiss or not to bring.

5/30/25
Date

MICHAEL K. HAYES #61395 MO
Assistant United States Attorney

5/30/25
Date

WILLIAM BURNS
Defendant

5/30/2025
Date

JASON KORNER #58495 MO
Attorney for Defendant

18